ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT - 1 2012

at _2_ o'clock and _40_ min. _____ M.
SUE BEITIA, CLERK

FLORENCE T. NAKAKUNI      #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR.    #3740
Chief, Fraud & Financial Crimes
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
Telephone: 541-2850
Facsimile: 541-2958
E-mail: Les.Osborne@usdoj.gov

TIMOTHY J. STOCKWELL
DENNIS R. KIHM
Special Attorneys
U.S. Department of Justice, Tax Division
601 D Street, N.W. Room 7030
Washington, D.C.  20004
Telephone: (202) 514-5614
Facsimile: (202) 514-9623
Email: Timothy.J.Stockwell@usdoj.gov
Email: Dennis.R.Kihm@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 10-00631-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF PLEA AGREEMENT |
| DENNIS LAWRENCE DUBAN,   (04) | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorneys, the United States Attorney for the District of Hawaii, Leslie E. Osborne, Jr., Assistant U.S. Attorney, and Timothy J. Stockwell and Dennis R. Kihm, Special Attorneys, and the Defendant, DENNIS LAWRENCE DUBAN, and his attorneys, Michael Purpura and Erika Lewis, have agreed upon the following:

1.   Indictment. The Defendant acknowledges that he has been charged in an Indictment in case number 10-CR-00631, with two counts of violating Title 18, United States Code, Section 371, and three counts of violating Title 26, United States Code, Section 7206(2). The Defendant has read the charges against him contained in the Indictment, and those charges have been fully explained to him by his attorneys. The Defendant fully understands the nature and elements of the crimes with which he has been charged.

2.   Agreement. The Defendant will enter a voluntary plea of guilty to Count 2 of the Indictment charging him with conspiracy to defraud the Internal Revenue Service, and Count 4 of the Indictment charging him with willfully aiding and assisting in the preparation of a false Form 1040, personal income tax return, for Charles Alan Pflueger for tax year 2004.

2

The government agrees to move to dismiss the remaining counts of the Indictment as to the Defendant after sentencing.  Further, the government agrees not to file any additional charges concerning a criminal investigation regarding the Defendant's possible failure to properly report New Zealand bank accounts, based on evidence now known to the government.  The Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

3.   <u>Voluntary and Knowing Plea</u>. The Defendant is entering this plea because he is in fact guilty of conspiracy to defraud the IRS, as charged in Count 2 of the Indictment, and aiding and assisting in the preparation of a false Form 1040, personal income tax return, for Charles Alan Pflueger for tax year 2004, as charged in Count 4 of the Indictment.  The Defendant agrees that this plea is voluntary and not the result of force or threats.

4.   <u>Penalties</u>. The Defendant understands that the statutory penalties for the offenses to which he is pleading guilty include:

<u>Conspiracy to Defraud</u> – 18 U.S.C. § 371

a. Up to 5 years imprisonment and a fine of up to $250,000, plus a term of supervised release of not more than 3 years;

b. A $100 special assessment as to the count to
which the Defendant is pleading guilty.  The
Defendant agrees to pay this special assessment
to the District Court's Clerk's Office, to be
credited to said special assessments, before
the commencement of any portion of sentencing.
The Defendant acknowledges that failure to make
such full advance payment in a form and manner
acceptable to the government will allow, though
not require, the government to withdraw from
this agreement at its option.

Preparation of a False Return – 26 U.S.C. § 7206(2)

a. Up to 3 years imprisonment and a fine of up to
$250,000, plus a term of supervised release of
not more than one year;

b. A $100 special assessment as to the count to
which the Defendant is pleading guilty.  The
Defendant agrees to pay this special assessment
to the District Court's Clerk's Office, to be
credited to said special assessments, before
the commencement of any portion of sentencing.
The Defendant acknowledges that failure to make
such full advance payment in a form and manner

acceptable to the government will allow, though

not require, the government to withdraw from

this agreement at its option.

    5.   <u>Elements</u>. The Defendant fully understands that the elements of the crimes with which he has been charged are as follows:

<u>Conspiracy to Defraud</u> – 18 U.S.C. § 371

    a. The existence of an agreement by two or more persons to defraud the United States by deceitful or dishonest means;

    b. The Defendant's knowing and voluntary participation in the conspiracy; and

    c. The commission of an overt act in furtherance of the conspiracy.

<u>Preparation of a False Return</u> – 26 U.S.C. § 7206(2)

    a. The Defendant aided or assisted in, procured, counseled, or advised the preparation or presentation of a federal income tax return;

    b. The federal income tax return was false as to a material matter; and

    c. The Defendant acted willfully.

    6.   <u>Factual Basis</u>. The Defendant has committed each of the elements of the crimes to which he is pleading guilty,

and admits that there is a factual basis for this guilty plea.
The following facts are true and undisputed:

Defendant Duban was a certified public accountant who ran
an accounting firm, Duban Sattler and Associates, LLP (formerly
Duban Accountancy, LLP), in Los Angeles, California. Duban
provided accounting and tax planning services to Hawaii
residents Charles Alan Pflueger, James Pflueger, and some of the
Hawaii-based entities they controlled, including Pflueger, Inc.,
Pacific Auto Distributors, LLC ("PAD"), Pflueger Group, LLC, and
Pflueger Properties.

### Personal Expenses

Duban knew that beginning as early as 2003, personal
expenses of Charles Alan Pflueger were being paid for by
Pflueger, Inc. and illegally deducted on Pflueger, Inc.'s
corporate income tax returns as business expenses. In fact, in
early 2004, Duban discussed with Charles Alan Pflueger the
negative implications of running personal expenses through the
corporation. Duban and Charles Alan Pflueger agreed that the
personal expenses paid for by Pflueger, Inc. be treated as
income to Charles Alan Pflueger. However, at the end of the
year, Duban directed Chief Financial Officer Randall Kurata to
illegally deduct certain of these same personal expenses as

6

business expenses of Pflueger, Inc., or to otherwise not properly treat them as income to Charles Alan Pflueger.  Duban also knew that some personal expenses of another co-defendant were being paid for and illegally deducted by Pflueger, Inc.

During at least 2003 through 2006, Duban prepared Forms 1040 individual income tax returns for Charles Alan Pflueger and James Pflueger.  In preparing these returns Duban did not include as additional items of income all personal expenses of which he was aware were paid for by Pflueger, Inc. and constituted income to the taxpayer.  Specifically, for tax year 2004, he aided and assisted in the preparation of a materially false Form 1040 individual income tax return for Charles Alan Pflueger that did not report as income certain payments for personal expenses made on his behalf by Pflueger, Inc.  Duban signed the return on or about October 14, 2005, knowing it was materially false and that it would be filed from the District of Hawaii.  Duban's actions were willful and knowing, and not the result of an accident or mistake.

<u>Hacienda</u>

In November 2007, Pflueger Properties, one of James Pflueger's entities, sold a San Diego, California investment property called Hacienda for $27,500,000.  Duban then knowingly

agreed with another co-defendant to file a false Pflueger
Properties 2007 Form 1065 partnership income tax return, which
falsely reported the gain on the sale of the Hacienda property.
Duban intentionally reported the basis of Hacienda as
approximately $7 million higher than its actual basis.  Duban
knew that the basis was minimal given that Hacienda was a
replacement property in a predecessor Internal Revenue Code
Section 1031 "Like Kind Exchange," and therefore Duban had no
legitimate reason to inflate the basis by over $7 million.

Given that Pflueger Properties was a flow-through entity,
Duban also willfully caused to be filed with the IRS a false
2007 Form 1040 individual income tax return for James Pflueger
that also under reported the gain on the sale of the Hacienda
property.  Duban signed the return as preparer on or about
October 9, 2009, knowing it was materially false and that it
would be filed from the District of Hawaii.  Duban's actions
were willful and knowing, and not the result of an accident or
mistake.

<u>Vista Pacifica Trust</u>

In August 2007, Duban and others assisted James Pflueger in
creating a nominee Cook Islands trust named Vista Pacifica
Trust.  In October 2007, Duban and others assisted James

Pflueger in opening up a bank account at Wegelin Bank in Zurich, Switzerland held in the name of "Southpac Trustee International, Inc., as Trustee of the Vista Pacifica Trust." Duban engaged Rochdale Investment Management, a New York-based firm, as investment managers for the Wegelin account. After the sale of Hacienda in November 2007, Duban and James Pflueger sent the proceeds of the Hacienda sale, over $14 million, to the Wegelin account. Duban and James Pflueger then never timely reported James Pflueger's beneficial interest in the Swiss account on Schedule B of his Form 1040 individual income tax return or by filing a Report of Foreign Bank Account ("FBAR") until after the start of the criminal investigation.

### Lookout Point Limited

In July 2005, Duban and another individual established Lookout Point Limited, a New Zealand corporation. Duban was listed as a Director of Lookout Point Limited and contributed funds to the entity for the purchase of residential rental property in New Zealand. In or about 2005, Lookout Point Limited opened at least two bank accounts at the Bank of New Zealand. As a Director and Shareholder of Lookout Point Limited, Duban had a financial interest in, or signature or other authority over, these foreign bank accounts. However, for

at least 2006 and 2007, Duban willfully failed to report his interest in at least one of the New Zealand accounts on Schedule B of his individual income tax returns and he willfully failed to file an FBAR reporting his interest in at least one of the accounts.

These facts do not constitute the entirety of facts surrounding the Defendant's conduct, but are sufficient to establish a factual basis for this guilty plea.

7. <u>Charges Reflect Seriousness of Offense</u>. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

8. <u>Sentencing Guidelines Stipulations</u>. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the Defendant in connection with this matter:

a. Relevant Conduct:  The Defendant agrees that the
tax loss, and the conduct associated therewith,
including as described above in the "Factual
Basis" section of this agreement, may be
considered as relevant conduct under Guidelines
§ 1B1.3 and as the nature and circumstances of
the offense under 18 U.S.C. § 3553(a)(1), even
if not charged in the instant Indictment.

b. Tax Loss: The Defendant admits that the tax loss
to be applied to the Tax Table at Guidelines §
2T4.1, using the 2011 Guidelines Manual,
including relevant conduct under § 2T1.1, cmt.
2, is at least more than $1,000,000, which would
result in a Base Offense Level of 22.  The
Defendant understands that the government is
free to argue at sentencing, and the Defendant
free to oppose, that the tax loss applied to the
Tax Table at Guidelines § 2T4.1, using the 2011
Guidelines Manual, including relevant conduct
under § 2T1.1, cmt. 2, is more than $2,500,000
but not more than $7,000,000, which would result
in a Base Offense Level 24.

11

c. <u>In the Business of Preparing Returns</u>.  The
Defendant admits that he was in the business of
preparing or assisting in the preparation of tax
returns, and that the Base Offense Level be
increased by 2 levels pursuant to Guidelines §
2T1.4(b)(1)(B).

d. <u>Sophisticated Means</u>. The Defendant admits that
the offense conduct involved sophisticated
means, and that the Base Offense Level be
increased by 2 levels pursuant to Guidelines §
2T1.4(b)(2).

e. <u>Acceptance of Responsibility</u>. The government
will advocate for a two-point decrease in the
Defendant's total offense level, within the
meaning of Guidelines § 3E1.1(a).  If the
Defendant's total offense level is 16 or
greater, the government will advocate for an
additional one-point decrease within the meaning
of Guidelines § 3E1.1(b).

9.    <u>Court's Sentencing Considerations</u>. The parties
agree that notwithstanding the Agreement herein, the Court is
not bound by any stipulation entered into by the parties but

may, with the aid of the presentence report, or upon a
sentencing hearing if appropriate, determine the facts relevant
to sentencing.  The Defendant understands that the Court in
imposing sentence will consider the provisions of the Sentencing
Guidelines.  The Defendant agrees that there is no promise or
guarantee of the applicability or non-applicability of any
Guideline or any portion thereof, notwithstanding any
representations or predictions from any source.

          10.  FBAR Penalty.  The Defendant agrees that in order
to resolve his civil liability for failing to file Reports of
Foreign Bank Accounts ("FBARs"), Forms TD F 90-22.1, regarding
his New Zealand accounts, he will pay as a penalty fifty percent
of the aggregate balance in his New Zealand accounts for the one
year with the highest balance at any point in the year.  The
Defendant also agrees to enter into a closing agreement with the
IRS prior to sentencing regarding his civil liability for
failing to file FBARs.  Nothing in this paragraph limits the
IRS's ability to impose additional liability or penalties for
the Defendant's failure to file FBARs for other years.

          11.  Restitution.  The Defendant agrees to pay
restitution to the U.S. Department of Treasury, Internal Revenue
Service (IRS) in the amount of the tax loss attributable to the

13

Defendant's individual tax liability, including relevant

conduct, as determined by the Court at the time of sentencing.

The government will not seek restitution from the Defendant as

to the tax liability of other taxpayers for which the Defendant

prepared returns.  The Defendant agrees that he will sign any

IRS forms that are necessary to enable the IRS to make an

immediate assessment of that portion of the tax and interest

that he agrees to pay as restitution.  The Defendant also agrees

not to file any claim for refund of taxes or interest

represented by any amount of restitution paid pursuant to this

plea agreement.  The Defendant further agrees that he is liable

for the fraud penalty under 26 U.S.C. §§ 6663 or 6651(f) on the

amount of any restitution for any of the Defendant's individual

income tax liabilities.  The Defendant agrees to the immediate

assessment of the fraud penalty on this amount and agrees that,

to enable the IRS to make an immediate assessment of the fraud

penalty, all appropriate forms will include the appropriate

amount of the fraud penalty.  The Defendant agrees not to

challenge or dispute any fraud penalties on this amount, and the

parties understand that the Defendant will receive proper credit

for the payments made pursuant to this plea agreement.  This

agreement does not require the imposition of the fraud penalty

14

for other tax years relevant to the Indictment, nor does it
prevent collection of the same.

    a. If the Court orders the Defendant to pay
restitution to the IRS for the failure to pay
tax, either directly as part of the sentence or
as a condition of supervised release, the IRS
will use the restitution order as the basis for a
civil assessment.  <u>See</u> 26 U.S.C. § 6201(a)(4).
The Defendant does not have the right to
challenge the amount of this assessment.  <u>See</u> 26
U.S.C. § 6201(a)(4)(C).  Neither the existence of
a restitution payment schedule nor the
Defendant's timely payment of restitution
according to that schedule will preclude the IRS
from administrative collection of the
restitution-based assessment, including levy and
distraint under 26 U.S.C. § 6331.

    b. Except as set forth in paragraph 13 regarding the
civil liability for failing to file Reports of
Foreign Bank and Financial Accounts ("FBARs"),
the Defendant agrees that nothing in this plea
agreement shall limit the IRS in its lawful

examination, determination, assessment, or collection of any taxes, penalties or interest due from the Defendant for the time period covered by this plea agreement or any other time period.  The Defendant agrees that this plea agreement, or any judgment, order, release, or satisfaction issued in connection with this plea agreement, will not satisfy, settle, or compromise the Defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additions to tax, interest, and penalties, owed to the IRS for the time period covered by this plea agreement or any other time period.  The Defendant also agrees that this plea agreement does not have any binding effect on the IRS's civil division or any administrative section of the IRS.  The Defendant further understands that the IRS may take other civil action against the Defendant, notwithstanding this plea agreement.

12.  Appeal. The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United

States Code, Section 3742(a).  The Defendant knowingly waives the right to appeal, except as indicated in subparagraph b below, any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the government in this plea agreement.

    a. The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the Defendant may make such a challenge:

        1.  As indicated in subparagraph b below;

        2.  Based on a claim of ineffective assistance of counsel.

    b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal that portion of his sentence greater than specified

in that guideline range and the manner in which
that portion was determined under Section 3742
and to challenge that portion of his sentence
in a collateral attack.

c. The government retains its right to appeal the
sentence and the manner in which it was
determined on any of the grounds stated in
Title 18, United States Code, Section 3742(b).

13.   <u>Presentence Report and Acceptance of Plea
Agreement</u>. The Defendant understands that this Agreement will
not be accepted or rejected by the Court until there has been an
opportunity by the Court to consider a presentence report,
unless the Court decides that a presentence report is
unnecessary.  The Defendant understands that the Court will not
accept an agreement unless the Court determines that the
remaining charges adequately reflect the seriousness of the
actual offense behavior and accepting the agreement will not
undermine the statutory purposes of sentencing.

14.   <u>Waiver of Rights</u>. The Defendant understands that
by pleading guilty he surrenders certain rights, including those
listed below.  The Defendant's attorney has explained those

18

rights to him, and the consequences of the waiver of those rights.

a. If the Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial.  The trial could be either a jury trial or a trial by a judge sitting without a jury.  The Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury;

b. If the trial was a jury trial, the jury would be composed of twelve laypersons selected at random.  The Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be

instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt;

c. If the trial was held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt;

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the Defendant.  The Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, the Defendant could present witnesses and other evidence on his own behalf.  If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e. At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

15. <u>No Other Inducements to Plea</u>. The Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce the Defendant to plead guilty.

16. <u>Court's Rejection of Plea Agreement</u>. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.  The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

//

//

//

//

//

//

21

17.   <u>Government's Duty to Inform</u>. The Defendant understands that the government will apprise the Court and the United States Probation Office of the nature, scope and extent of the Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

DATED: Honolulu, Hawaii, _Oct. 1, 2012_

AGREED:

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

_____
LESLIE E. OSBORNE
Chief, Criminal Section

_____
TIMOTHY J. STOCKWELL
DENNIS R. KIHM
Special Attorneys

_____
DENNIS LAWRENCE DUBAN
Defendant

_____
MICHAEL PURPURA
ERIKA LEWIS
Attorneys for Defendant

22